# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY TAYLOR,<br><br>        Plaintiff,<br><br>    vs.<br><br>FEDEX FREIGHT, INC.,<br><br>        Defendant.<br>_____/ | Case No. 1:16-cv-0438-BAM<br><br>**ORDER ON DEFENDANT FEDEX FREIGHT, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>(Doc. 27) |

Plaintiff Roy Taylor ("Plaintiff" or "Mr. Taylor") filed this wrongful termination of employment action against Defendant FedEx Freight, Inc. ("FedEx") on March 29, 2016. (Doc. 1). The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 10, 16). For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. (Doc. 17).

Presently before the Court is a motion for summary judgment, or in the alternative, partial summary judgment brought by Defendant FedEx Freight, Inc. ("FedEx") pursuant to Federal Rule of Civil Procedure 56. (Doc. 27). Plaintiff opposed the motion on August 4, 2017, and FedEx replied on August 11, 2017. (Docs. 34, 39). The Court heard oral argument on September 1, 2017. Counsel James Ashworth appeared in person on behalf of Plaintiff Roy Taylor. Counsel Tony Carvalho appeared in person on behalf of Defendant FedEx. Having considered the moving, opposition and reply papers and the parties' oral arguments, FedEx's motion is DENIED in PART and GRANTED in PART.

1

**BACKGROUND**

**A.    Summary**

For over 13 years, Mr. Taylor, presently a sixty-two year old African-American male, worked as a "line-haul driver" for FedEx until March 21, 2014 when he was fired. Mr. Taylor filed the underlying complaint on March 30, 2016, alleging that FedEx terminated him in retaliation for serving as a class representative in two class action lawsuits arising out of wage-and-hour disputes with FedEx. These class actions were *Taylor v. FedEx*, Case No. 5:10-cv-02118-LHK removed to the Northern District of California ("*Taylor 1*"), and *Taylor v. FedEx*, Case No. 1:13-cv-01137-DAD-BAM removed to the Eastern District of California ("*Taylor 2*").[1] *Taylor 1* and *Taylor 2* resulted in an aggregate settlement award of $9 million against FedEx.[2]

In the underlying action, Mr. Taylor alleges three causes of action under California state law for: (1) Retaliation in violation of California Labor Code § 1102.5; (2) Wrongful Termination in Violation of Public Policy; and (3) Intentional Infliction of Emotional Distress.[3] In challenging Mr. Taylor's lawsuit, FedEx argues that Mr. Taylor's termination was not based on his participation in the class litigation but for solely legitimate, non-retaliatory reasons, namely, Plaintiff's lengthy history of disciplinary problems.[4]

///

---

[1]  Defendant requests that the Court take judicial notice of the pleadings filed in *Taylor 1* and *Taylor 2*. (Doc. 28). Plaintiff does not object to Defendant's request for judicial notice. Courts may take judicial notice of proceedings in other courts, both within and without the federal judicial system. *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); Fed. R. Evid. 201. Accordingly, FedEx's request for judicial notice is HEREBY GRANTED. (Doc. 28).

[2]  Plaintiff requests that the Court take judicial notice of the settlement amounts awarded in *Taylor 1* and *Taylor 2*. (Doc. 35). Defendant does not object to Plaintiff's Request for Judicial Notice. Courts may take judicial notice of proceedings in other courts, both within and without the federal judicial system. *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); Fed. R. Evid. 201. Accordingly, Plaintiff's request for judicial notice is HEREBY GRANTED. (Doc. 35).

[3]  On July 17, 2017, Plaintiff stipulated to voluntarily dismiss his fourth cause of action alleging racial discrimination in violation of California's Fair Employment and Housing Act pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). (Docs. 27, 29).

[4]  The parties interpose several objections to evidence offered in support of, or opposition to, Defendant's Motion for Summary Judgment. (*See* Docs. 36, 39). In ruling on the instant motion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of disputed and undisputed facts, objections, and all other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate. Unless stated otherwise, the Court has not relied on any of the disputed portions of the declarations to deny summary judgment. To the extent that the Court may have considered some of the disputed evidence in denying summary judgment, the objections are overruled.

### B. Summary of Mr. Taylor's Employment

The following facts are not reasonably in dispute.[5] From May 18, 2000 through August 23, 2009, Mr. Taylor worked as line-haul driver for FedEx's West Sacramento, California Service Center. (Joint Statement of Undisputed Facts ("JSUF"), ¶ 6, (Doc. 27-16)).[6] In 2009, Mr. Taylor's position in West Sacramento was eliminated. He was given the option of being laid-off or moving to Medford, Oregon. (Plaintiff's Separate Statement of Disputed and Undisputed Facts ("PSS"), ¶ 4, (Doc. 36)). After opting to take the transfer opportunity, Mr. Taylor worked as a line driver for the Medford, Oregon Service Center from August 23, 2009 through June 2012. JSUF ¶ 7. In July 2012, Mr. Taylor was transferred to the newly built FedEx service center in Kettleman City, California. JSUF ¶ 8, PSS ¶ 10. Plaintiff remained employed as a line driver at the Kettleman Service Center until he was fired on March 21, 2014.

### C. Mr. Taylor's Termination

On or around February 12, 2014, Armando Magana, service center manager ("Armando") was informed by Todd Crimi, Kettleman Service Center Security Specialist, that Mr. Taylor had been going "off-route" by using the "25th Avenue direction," a road primarily reserved for agricultural traffic. Upon learning that Mr. Taylor was using the wrong route, Armando reported the issue to HR advisors Criss Madrigal and Katyna Naylor. JUSF ¶ 32.

On February 14, 2014, Armando asked Mr. Taylor about whether he used the "25th Avenue direction" on his runs. Mr. Taylor responded that he "always takes that route when he heads south." JUSF ¶ 33. Mr. Taylor also told Armando that other drivers may be doing the same. (Defendant's Separate Statement of Disputed and Undisputed Facts ("DSS"), ¶ 8, (Doc. 27-10)); (Deposition of Armando Magana ("Armando Depo.") at 58:20-59:9, (Doc. 27-4 at 18, Ex. 7)). Plaintiff claims that once Armando told him not to use this road anymore because of the farmer complaints, he readily

---

[5] The facts detailed here are derived from the Joint Statement of Undisputed Facts, and construed in the light most favorable to Plaintiff. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). While not all of the facts are considered material, they provide a background of the events. Material disputed and undisputed facts are discussed in detail where relevant to the Court's analysis.

[6] FedEx acquired Viking Freight, Inc. in 1998. JSUF ¶ 1. Mr. Taylor began his employment at FedEx on May 18, 2000, when it still operated under Viking Freight, Inc. JSUF ¶ 2. In 2002, FedEx officially changed Viking Freight to FedEx Freight West, Inc. JSUF ¶ 3.

complied with Armando's request.

On February 24, 2014, HR advisor Criss Madrigal asked Armando to formally address the "off-route" issue with Mr. Taylor by issuing a written warning. Armando Depo. at 59:23-60:5. On March 5, 2014 ("the March 5th incident"), Armando re-contacted Mr. Taylor in order to issue him a written warning for going off-route. DSS ¶ 8. During that meeting, attended by Armando and Alex Magana ("Alex"), Mr. Taylor "lost his temper" and raised his voice, told Armando and Alex "this is bullshit," then left the office slamming the door. PSS ¶ 20. Following the meeting, Armando immediately initiated a workplace violence investigation and recommended that Mr. Taylor be terminated. The next evening, Armando met with Mr. Taylor again to discuss his behavior the night before. In concluding the meeting, Armando relieved Mr. Taylor of his duties pending the workplace violence investigation. DSS ¶ 11.

The investigation for the March 5th incident was assigned to Human Resources Advisor, Kathy Frohock, who is zoned to Kettleman City. JUSF ¶ 17. Pursuant to FedEx policy, as a part of the investigation of the March 5th incident, Ms. Frohock also reviewed nine other incidents of prior corrective action received by Mr. Taylor. On March 11, 2014, Ms. Frohock concluded her investigation and recommended termination to outside Human Resources manager Brian Jenkins. DSS ¶ 12. Although Katyna Naylor was in charge of Ms. Frohock's region and would traditionally be the HR Manager to review the results of Ms. Frohock's investigation, FedEx opted to give the responsibility for review to Mr. Jenkins, an HR Manager based in Pennsylvania, because Ms. Naylor was involved in Mr. Taylor's class action lawsuits. JUSF ¶ 18. Upon review of Ms. Frohock's investigation, Brian Jenkins gave the final approval for Mr. Taylor's termination. JUSF ¶ 36.

On March 21, 2014, FedEx issued Mr. Taylor a "Notice of Change in Employment Status" which stated: "Effective 3/21/14, you were discharged for Conduct. As per our discussions by phone, you refused to come in to the Kettleman City Service Center for a meeting today (3/21/14). At your request, we are sending your final paycheck to your last known address." Deposition of Roy Taylor ("Taylor Depo.") at 177:1-16, (Doc. 27-4 at 18)).

On March 28, 2014, Mr. Taylor appealed his termination through company procedures stating that he is "uncertain as to what conduct related to [his] termination" and that he "never had an

opportunity to correct any such conduct." Taylor Depo. at 180:18-22. On April 16, 2014, Human Resources provided a letter to Mr. Taylor informing him that his termination was affirmed. Taylor Depo. at 181:18-182:4; *See* Declaration of Brian Jenkins ("Jenkins Decl."), at ¶ 26 (Doc. 27-12).

### D. Mr. Taylor's Disciplinary History

FedEx employs a Corrective Action Process for Hourly Employees which states that the entire history of corrective action involving any policy will be considered when reviewing unacceptable behavior issues. Jenkins Decl. at ¶ 10. The workplace violence investigation following the March 5th incident resulted in a written Corrective Action Report ("CAR") drafted by Ms. Frohock. *See* Declaration of Charles Trudung Taylor ("Trudung Decl."), ¶ 20, Ex. 21 (Doc. 27-11 at 35-38). In the CAR, Ms. Frohock details ten instances of misconduct she relied on when making her recommendation that FedEx terminate Mr. Taylor:

1. On February 28, 2007, Mr. Taylor received a disciplinary action notice for displaying uncooperative and unprofessional behavior at the Whittier stop. He refused to give his tractor keys to the on duty mechanic and he engaged in hostile discussions. Jenkins Decl. ¶ 11.

2. On July 20, 2008, Mr. Taylor received a verbal warning for using inappropriate language during a discussion with another employee on June 27, 2008. Jenkins Decl. ¶ 12.

3. On November 18, 2010, Mr. Taylor received a Corrective Action Process/Coaching Session for voicing his opinion on another road driver's decision to work another shift, and intimidating the employee. Jenkins Decl. ¶ 13.

4. On January 10, 2011, Mr. Taylor received a Corrective Action Form for displaying a pattern of disruptive behavior while at work. While working, Mr. Taylor pointed his finger at another employee making the employee feel threatened and intimidated. Jenkins Decl. ¶ 14.

5. On May 11, 2011, an employee lodged a handwritten complaint about Mr. Taylor using profanity at the fuel island. Jenkins Decl. ¶ 15.

6. On May 17, 2011, a female road driver complained that Mr. Taylor was picking on her repeatedly. Jenkins Decl. ¶ 16.

7. On October 17, 2011, Mr. Taylor received a 3-day suspension for an incident occurring on September 14, 2011 where Mr. Taylor was seen raising his voice at his supervisor and calling him arrogant. Jenkins Decl. ¶ 17.

8. On June 1, 2012, Craig Flick conducted a workplace violence ("WPV") investigation after Portland Operations' Supervisor, Joan Forster, complained because Mr. Taylor: (a) screamed at Joan Forster for dispatching another driver before him; (b) used profanity during this confrontation; (c) stood between Forster and the only door out of the office causing her (Forster) to feel trapped; (d) called Forster a "stupid robot" and told her she did not know what she was doing. Mr. Taylor denied the allegations. Jenkins Decl. ¶ 18.

9. On October 3, 2013, Mr. Taylor received a Corrective Action Process/Coaching session for inappropriate work place behavior; Mr. Taylor was irate with local leadership because he went into the wrong entrance on September 25, 2013. Jenkins Decl. ¶ 19.

10. On March 5, 2014, Mr. Taylor was written up for going "off-route" to use the "25th Avenue direction" which caused complaints from farmers. Upon review, FedEx management discovered that Mr. Taylor was not approved to take the 25th Avenue direction. Jenkins Decl. ¶ 20.

### E. Mr. Taylor's Class Action Litigation

In late 2006, Mr. Taylor began raising concerns with FedEx management about the FedEx piece-rate compensation policy. PSS ¶ 1. On June 18, 2007, Mr. Taylor and three other employees filed a class action complaint in *Taylor 1* in the Santa Clara County Superior Court alleging: wages due; compensation due for meal and rest periods; waiting time penalties pursuant to California Labor Code section 203; failure to comply with itemized employee wage statement provisions; failure to maintain records at a centralized location; conversion; and violation of Business and Professions Code section 17200 *et seq*. JSUF ¶ 9. Besides Mr. Taylor, the three named plaintiffs in *Taylor 1* were: Arletha Flud, Thomas J. Wood, and Earnest C. Harvey II. JSUF ¶ 10. Arletha Flud went on medical disability on November 29, 2006 and she was no longer employed at the time of *Taylor 1*. JSUF ¶ 11. FedEx terminated Thomas Wood for misconduct on December 10, 2011. JSUF ¶ 12. Earnest Harvey

II, is a current FedEx employee in the Medford, Oregon Service Center. JSUF ¶ 13. In 2011, *Taylor 1* settled for $5.25 million. (Doc. 35).

On June 13, 2013, Mr. Taylor filed *Taylor 2* in Kings County Superior Court again alleging that FedEx failed to properly compensate employees for time worked, and to timely pay their wages upon termination. On July 19, 2013, FedEx removed *Taylor 2* to the Eastern District Court in Fresno based on diversity jurisdiction. JSUF ¶ 14. Mr. Taylor was the only named plaintiff in *Taylor 2*. JSUF ¶ 15. Mr. Taylor was terminated while *Taylor 2* was still in litigation. *Taylor* 2 settled in 2016 for $3.25 million. PSS ¶ 27.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a

7

jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## **DISCUSSION**

FedEx first seeks summary judgment on Mr. Taylor's retaliation and wrongful termination claims, arguing that: 1) Mr. Taylor cannot establish the essential elements of his retaliation claim under California Labor Code § 1102.5; and 2) because his claim for termination in violation of public policy is based on his § 1102.5 retaliation claim, that claim fails as well.[7] (Doc. 27-1).

Specifically, FedEx argues that no causal link exists between the class action litigation and FedEx's decision to terminate Mr. Taylor. According to FedEx, Plaintiff's termination occurred over seven years after he filed his first complaint against FedEx making that time lapse insufficient to establish causation. Further, even if Mr. Taylor were able to establish a prima facie case, there is no evidence to suggest that Mr. Taylor's lengthy history of insubordination and resulting discipline were

---

[7] California Labor Code section 1102.5 (California's whistleblower retaliation statute) prohibits an employer from retaliating against an employee for disclosing information "to a government or law enforcement agency ... if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Cal. Lab.Code § 1102.5(b).

8

not the true reasons for his termination. Plaintiff's opposition, on the other hand, tells the story of an employee who went many years with little to no disciplinary action until in 2007—after challenging FedEx's compensation policies—FedEx began to discipline him for minor and groundless infractions in an effort to force his resignation or cause his termination.

To prevail on this motion for summary judgment, FedEx must first show that Plaintiff has not presented competent evidence to establish a prima facie case of retaliation. If Mr. Taylor can do so, the burden shifts to FedEx to produce legitimate, non-retaliatory reasons for its actions. The burden then shifts back to Plaintiff to create a genuine issue of material fact that those reasons are merely pretextual to conceal an unlawful motive. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Using this framework, the Court analyzes Mr. Taylor's retaliation claim below.

**1.     Plaintiff Has Raised Genuine Issues of Material Fact as to His Retaliation Claim**

   **A.     Prima Facie Case**

To establish a prima facie case of retaliation under California Labor Code § 1102.5, a plaintiff must first establish a prima facie case of retaliation by showing that: (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1042, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005) (citations omitted).

      **i.     Protected Activity and Adverse Employment Action**

FedEx does not contest that Mr. Taylor has satisfied the first and second elements of his prima facie case. Mr. Taylor engaged in protected activities when he served as a class representative in the wage-and-hour class action lawsuits filed against FedEx on June 18, 2007 and June 13, 2013. He was later subjected to an adverse employment action when FedEx terminated him on March 21, 2014.

      **ii.     Causal Link**

FedEx, however, points to the long time span between Mr. Taylor's class action litigation and his termination in arguing that Mr. Taylor cannot establish the third element causation. "To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the

decision would not have been made." *Kraus v. Presidio Trust Facilities Division/Residential Management Branch*, 704 F. Supp. 2d 859 (N.D. Cal. 2010) (*citing Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)).

An inference of causation may arise based on the timing of an adverse employment action. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred"). In particular, where an adverse employment action occurs "close on the heels" of the protected activity, the timing alone may be sufficient to support an inference of causation. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (holding on summary judgment that causation could be inferred based on timing of adverse employment actions). However, "a long period between an employer's adverse employment action and the employee's earlier protected activity may lead to the inference that the two events are not causally connected." *Wysinger v. Automobile Club of Southern California*, 157 Cal. App. 4th 413, 421, 69 Cal. Rptr. 3d 1 (2008).

FedEx argues that the proximity of time between the protected class-action litigation and the adverse termination is too attenuated. *Taylor 1* was filed seven years before Mr. Taylor's termination and *Taylor 2*, filed in July 2013, was nearly a year before Mr. Taylor's termination in March 2014. Thus, FedEx argues, these activities are not sufficiently close in time to support an inference of causation. (Doc. 27-1 at 16).

It is true that the temporal gap between either lawsuit and Mr. Taylor's ultimate termination is too long, by itself, to give rise to an inference of causation. In this circuit, Courts have repeatedly found that durations of four months and greater between the protected activity and termination are too remote to support a finding of causation based on timing alone. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citing cases). However, as this court has recognized, a lapse of time between a protected activity and an adverse action may not break the causal link if "the employer engages in a pattern of conduct consistent with a retaliatory intent" between the protected activity and adverse action. *See Soares v. California*, No. 2:16-00128 WBS-EFB, 2016 U.S. Dist. LEXIS 113390, 2016 WL 4466496, at * 16 (E.D. Cal. Aug. 23, 2016) (Nine-month lapse between

protected activity and ultimate termination did not preclude an inference of causation where employer increased harassment after the protected activity); *Wysinger*, 157 Cal. App. 4th at 421 (finding that a change in an employer's behavior following a protected activity could support an inference of causation despite a lengthy period between protected activity and adverse action); *accord Green v. Laibco, LLC*, 192 Cal. App. 4th 441, 455-456, 121 Cal. Rptr. 3d 415 (2011) (concluding that various sorts of retaliatory conduct beginning immediately after Plaintiff's protected complaint and persisting until her employment ended was sufficient evidence "to support an inference that plaintiff's complaint about . . . sexual harassment was a motivating factor in her later termination).

While FedEx doubts the idea that a rational jury could believe that "for seven years, FedEx laid the ground work for termination," that inference is not unreasonable and finds support in the record. Sufficient evidence demonstrates that Mr. Taylor began working for FedEx in 2000. For those first six years, Mr. Taylor faced minimal disciplinary action, limited to verbal warnings about leaving personal items in his line tractor. Trudung Decl. ¶ 21. Shortly after Mr. Taylor began questioning FedEx management in late 2006 about the FedEx compensation policy, Plaintiff received his first "write-up" from FedEx for an incident where Mr. Taylor had "hostile discussions" and refused to give his tractor keys to an on-duty mechanic at a stop. Jenkins Decl. ¶ 11. According to Mr. Taylor, this demonstrates that FedEx began to treat his behavior as threatening only after his complaints caused a threat to FedEx's bottom line.

Four months after his first written warning, Mr. Taylor, along with three others, became a lead Plaintiff in *Taylor 1*. According to Mr. Taylor, what came after his participation in *Taylor* 1 and his subsequent filing of *Taylor 2* was a pattern of retaliatory conduct by FedEx where he was singled out, treated less favorably and disciplined for any and every minor infraction including using profanity (a habit he alleges is common among truck drivers) and putting a sticker on a vending machine warning others that the machine was out of order. (Doc. 34 at 5).

Mr. Taylor also points to additional evidence where FedEx tried to launch a meritless workplace violence investigation against him despite statements from a material witness that a violence investigation was unwarranted. Mr. Taylor provides a copy of an email written to manager John Hinckley where the driver (unnamed) explains that he had a conversation with Mr. Taylor

wherein Mr. Taylor expressed frustration about the state of operations at the Kettleman Service center. Despite the driver's statements in the email that during the conversation with Mr. Taylor that he did not feel threatened in anyway; that he did not feel the need to report the matter to security or human resources; and that he did not perceive Mr. Taylor's comments as a "threat" but simply "as an employee talking privately to another employee, upset and obviously expressing an opinion," FedEx engaged in a workplace violence investigation against Mr. Taylor. *See* Declaration of James Ashworth ("Ashworth Decl."), at ¶ 7, Ex. 6 (Doc. 34-1).

At summary judgment, where courts hold plaintiffs to only a minimal standard in making their prima facie case, the mere proximity of all of these events coupled with undisputed evidence that many of the final decision makers knew of Plaintiff's ongoing litigation against FedEx is sufficient for the Court to infer causation. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Given the evidence, a jury could reasonably conclude that FedEx engaged in a pattern of antagonism after Mr. Taylor filed his class claims by singling him out and subjecting him to a higher level of scrutiny and unwarranted discipline. Mr. Taylor has therefore established a prima facie case of retaliation.

### B. Legitimate, Non-retaliatory Reason for Termination

Having concluded that Mr. Taylor has met his initial, minimal burden of showing an inference of retaliation in his disciplinary record and eventual termination, the burden shifts to FedEx to articulate a legitimate and non-retaliatory reason for why Mr. Taylor was terminated. Plaintiff concedes that FedEx has articulated a legitimate, non-retaliatory reason for his adverse employment action: his ten incidents of insubordination cited in the Corrective Action Report. Consequently, the burden then shifts back to the Plaintiff to rebut these proffered reasons as pretextual.

### C. A Jury Could Find that FedEx's Reasons Were Pretext

To show that FedEx's reason for terminating him is pretext and survive summary judgment, Plaintiff must produce enough evidence to show that either: 1) the alleged reason for his discharge was false, or 2) that the true reason for his discharge was based on retaliatory animus. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (1997). "[I]n an appropriate case, an inference of dissembling may arise where the employer has given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 363, 100

Cal. Rptr. 2d 352, 8 P.3d 1089 (2000). "[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact" as to pretext. *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).

Plaintiff has presented evidence from which a reasonable jury could conclude that some of the reasons offered for Mr. Taylor's termination were pretext. First, Mr. Taylor has offered a declaration from former FedEx supervisor, Jerry De La Fuente who declares that FedEx kept and maintained a separate file on Mr. Taylor, which was atypical for other employee files at FedEx. *See* Declaration of Jerry De La Fuente ("De La Fuente Decl."), (Doc. 34-2 at ¶ 5). Mr. De La Fuente declares that he was expressly instructed by his manager to document every encounter with Mr. Taylor and record the details of each encounter in an email. De La Fuente Decl. ¶ 6. According to Mr. De La Fuente, he was not asked to document his encounters with other drivers or employees in this way in his fourteen (14) years at FedEx. De La Fuente Decl. ¶ 6. In response, FedEx argues that this cannot serve as substantiating evidence of pretext because it is customary for FedEx to keep a separate file for employees who are involved in ongoing litigation. This disputed reason for keeping a separate file, however, raises a triable issue of fact as to pretext for disciplinary actions against Mr. Taylor.

Plaintiff provides further evidence that his treatment and punishment differed from that of other employees through declarations from former FedEx employees: (1) truck driver Kelly Hall who states that she "never saw or heard of anyone other than Roy Taylor getting disciplined or written-up for using profanity and/or engaging in a heated argument with management and (2) John Diaz, former Operations Supervisor and Road Dispatcher, who states, in part, his belief that FedEx management was "looking for excuses to write-up Roy Taylor for any minor infraction." *See* Declaration of Kelly Hall ("Hall Decl."), (Doc. 34-2 at ¶ 4); *See* Declaration of John Diaz ("Diaz Decl."), (Doc. 34-3 at ¶ 5). Defendant challenges the reliability of this evidence arguing that these declarations are from disgruntled former employees with an "ax to grind" against FedEx. Although the source of the evidence may have some bearing on its credibility, the issue of credibility is for the trier of fact. In ruling on a motion for summary judgment, the district court does not make credibility determinations; rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *See Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 255 (1986).

Second, there is a question surrounding whether Mr. Taylor was previously told to refrain from using the "25th Avenue direction," which is a hotly disputed factual issue. The facts and details surrounding Mr. Taylor's use of the "25th Avenue Direction" are particularly material because (1) this action served as the tenth and final instance of misconduct cited in the CAR that resulted in Mr. Taylor's termination and (2) the use of the "25th Avenue Direction" was the subject of the argument between Mr. Taylor and Armando Magana who made the initial recommendation to terminate Mr. Taylor. Deposition of Katyna Naylor ("Naylor Depo.") at 40:12-22, (Doc. 27-4 at 3).

In summarizing the events leading up to his termination, Mr. Taylor testified that he was not told that he could not use the "25th Avenue Direction" until after he was ultimately written up for using it. Indeed, when Armando approached Mr. Taylor about whether he used the "25th Avenue direction" Mr. Taylor readily admitted that "he always takes that route when he heads south" and that other drivers are doing the same. Armando Depo. at pp. 58-20. Mirroring Mr. Taylor's statements regarding the use of the "25th Avenue direction" are statements by Ms. Hall and Mr. Diaz that no one knew the "25th Avenue direction" was banned and that when Mr. Taylor was written-up, a majority of drivers (approximately 75%) were using the "25th Avenue Direction" without punishment. Diaz Decl. ¶ 7; Hall Decl. ¶ 6-8. While Defendant challenges the admissibility of these supporting statements and their ultimate ability to create a fact question, the Court need not rely on these statements as other reliable evidence supports the conclusion that Mr. Taylor was initially disciplined for unauthorized use of the "25th Avenue direction" when others were not.

The narrative portion of FedEx's Corrective Action Report states that in mid-February a security guard reported that "a driver" was impermissibly using the route. Trudung Decl. ¶ 20. Todd Crimi reviewed the surveillance tapes and identified that Mr. Taylor was using the "25th Avenue direction." Trudung Decl. ¶ 20. Once Mr. Taylor was identified as the infringing driver, FedEx's review of the surveillance tapes prematurely ended. The variance from route was brought to Armando's attention and he addressed the matter with Mr. Taylor on February 14, 2014. On that day, Mr. Taylor told Armando that other drivers were using the route but no further investigation was done. Three weeks later on March 5, 2014, Mr. Taylor was issued a written warning and he again told Armando, albeit loudly and aggressively, that his punishment was unfair. Taylor Decl. ¶ 25. Again,

no effort was made to verify whether others drivers ran afoul of FedEx's prohibition against use of the "25th Avenue direction." It was not until March 6, 2014, when Mr. Taylor called Kathy Frohock with his complaints that "he felt he was being singled out and that other drivers drive the same way and don't get written up" that Ms. Frohock asked Armando to review the Sunday tapes. Trudung Decl. ¶ 20. A review of those tapes revealed that another driver was using the "25th Avenue direction" and that driver was subsequently issued a written warning. Trudung Decl. ¶ 20. These are sufficient facts to raise a disputed issue as to whether the discipline here was targeted towards Mr. Taylor (and not others) for questionably retaliatory reasons.

Further underlying the question of whether his punishment for going off-route was pretext is email evidence submitted by Mr. Taylor and originally sent to Armando Magana and Todd Crimi in January 4, 2013, complaining that Mr. Taylor was "harassing" employees about joining *Taylor 2*. *See* Declaration of James Ashworth ("Ashworth Decl."), at 9 (Doc. 34-1). Anush Patel, Todd Crimi, and Armando—all individuals involved with Mr. Taylor's punishment for use of the "25th Avenue direction"—shared emails in 2013 discussing complaints about Mr. Taylor's recruitment of individuals for his suit against FedEx. Ashworth Decl. ¶ 9 at pg. 5. As discussed above, Todd Crimi was the individual who notified Armando that Mr. Taylor was wrongly using the "25th Avenue direction." Armando Depo. at 58. Three weeks later, Armando had a meeting with Mr. Taylor where Mr. Taylor lost his temper in protesting his discipline for using the "25th Avenue direction." FedEx would later use his conduct in the meeting with Armando to open an investigation that ultimately led to Mr. Taylor's termination.

For the reasons set forth above, Defendant is not entitled to summary judgment due to Plaintiff's failure to prevent sufficient evidence of pretext. Disputed issues of material fact preclude such a determination. Mr. Taylor has offered specific and substantial evidence from which a fact-finder could conclude that FedEx's employment actions during the relevant period were retaliatory, and FedEx's proffered explanation for its actions was pretextual. The Court therefore denies Defendant's Motion as to Plaintiff's claim for retaliation.

///

///

## 2. Plaintiff Has Raised Genuine Issues of Material Fact as to His Wrongful Termination Claim

Under California law, "[t]he elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Canupp v. Children's Receiving Home of Sacramento,* 181 F. Supp. 3d 767, 794 (E.D. Cal. 2016); *Nosal–Tabor v. Sharp Chula Vista Med. Ctr.*, 239 Cal.App.4th 1224, 1234–35, 191 Cal.Rptr.3d 651 (4th Dist. 2015).

FedEx concedes that if Plaintiff withstands summary judgment on his section 1102.5 retaliation claim, he can withstand summary judgment on his wrongful termination in violation of public policy claim. FedEx is correct. Plaintiff's claim for wrongful termination in violation of public policy claim is premised entirely on the same set of facts as his claim for retaliatory discharge. As both parties acknowledged in their briefing and at the hearing, Plaintiff's wrongful termination claim rises or falls with the underlying retaliation claim. Accordingly, because the Court denies summary judgment on Plaintiff's retaliation claim, it also denies summary judgment on Plaintiff's wrongful termination claim based on the alleged violation of California Labor Code § 1102.5.

## 3. Summary Judgment is Warranted as to Mr. Taylor's Third Cause of Action for Intentional Infliction of Emotional Distress

FedEx moves for summary judgment on Mr. Taylor's intentional infliction of emotional distress ("IIED") claim on the grounds that the claim fails on the merits. (Doc. 27-1 at 18). *See King v. AC & R Advert.*, 65 F.3d 764, 769-70 & n.3 (9th Cir. 1995) (affirming grant of summary judgment on IIED claim on the merits). A cause of action for intentional infliction of emotional distress ("IIED") exists when there is: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe of extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Cochran v. Cochran*, 65 Cal.App.4th 488, 496 (1998). Evidence that reflects "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" is insufficient. *Hughes*, 46 Cal.4th at 1051. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." *Fuentes v. Perez*, 66 Cal.App.3d 163, 172 (1977) (citation omitted).

"Managing personnel is not outrageous conduct beyond the bounds of human decency." *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80, 53 Cal. Rptr. 2d 741 (1996). "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.* Similarly, in general "an employee can have no tort recovery for emotional distress resulting from his employment. The emotional distress which stems from an employer's unfavorable supervisory decisions . . . is a normal part of the employment relationship, even when the distress results from an employer's conduct that is intentional, unfair, or outrageous." *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 577, 74 Cal. Rptr. 2d 29 (1998).

Here, Plaintiff presents evidence alleging that FedEx made retaliatory personnel decisions, such as meting out unfair discipline and requiring Plaintiff to move away from his home and family to work in Medford, Oregon. However, even when viewing this evidence in the light most favorable to Plaintiff, summary judgment is warranted on his IIED claim because such personnel decisions are not "outrageous," even if they arise out of retaliatory treatment. *See Janken*, 46 Cal. App. 4th at 80-81. Thus, even if Defendant scrutinized Plaintiff more closely than other employees, disciplined him unfairly, transferred him out of state, and eventually terminated him, Plaintiff has not established a cause of action for intentional infliction of emotional distress. Defendant's conduct is not so "beyond all possible bounds of decency" as to qualify as "extreme and outrageous conduct," and therefore, Plaintiff's IIED claim cannot survive summary judgment. *See Kasperzyk,* 2015 U.S. Dist. LEXIS 37953, 2015 WL 1348503, at *12. The Court therefore concludes that FedEx is entitled to summary judgment on this claim.

///

**CONCLUSION AND ORDER**

Based on the foregoing, it is HEREBY ORDERED as follows:

1. Defendant FedEx's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, filed on July 20, 2017, is GRANTED in part and DENIED in part as follows:

    a. Defendant's Motion for Summary Judgment on Plaintiff's claim for Retaliation is DENIED;

    b. Defendant's Motion for Summary Judgment on Plaintiff's claim for Wrongful Termination in Violation of Public Policy is DENIED;

    c. Defendant's Motion for Summary Judgment on Plaintiff's claim for Intentional Infliction of Emotional Distress is GRANTED.

IT IS SO ORDERED.

Dated: **September 12, 2017**    /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE